*1094 OPINION.
Siefkin:
The error assigned in this case is the denial by the respondent of personal service classification for the petitioner during the years 1918 and 1919. An alternative contention of the petitioner is that if personal service classification is denied and it is not permitted to deduct as an expense a reasonable salary for its president, it being contended that the amount actually paid to him was inadequate, the petitioner is entitled to special relief under sections 327 and 328 of the Revenue Act of 1918.
Section 200 of the Revenue Act of 1918 states:
The term “ personal service corporation ” means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; * * *
It seems dear that the income of the petitioner during the years in controversy must be ascribed primarily to the activities of B. E. Chappelow. In 1918 Chappelow held 16234 shares of the total shares of the petitioner, and in 1919 he held 224 shares. The other two stockholders were more or less inactive, assisting only in an advisory capacity. In 1918 Chappelow secured about 87 per cent of the business of the petitioner and in 1919 he secured about 86 per cent. Furthermore, he handled all the business secured by the petitioner, since no plans were ever submitted to the advertisers that had not been formulated by him. In 1918 the professional fees and commissions secured for the petitioner by B. E. Chappelow amounted to $81,225. The total fees and commissions received by petitioner in *1095 1918 amounted to $92,864. In 1919 Chappelow secured $75,797.89 of the total professional fees and commissions of $87,259.92. The petitioner had other employees but it seems apparent that the income must be ascribed primarily to the activities of this one stockholder.
During 1919 B. E. Chappelow owned about 90 per cent of the stock of the petitioner and, therefore, constituted the principal stockholder, his wife, A. B. Chappelow holding only about 10 per cent of the stock. He was regularly engaged in the active conduct of the business of the petitioner.
However, with regard to the year 1918, when A. B. Chappelow owned about 35 per cent of the stock, it can not be said that she was not one of the principal stockholders, and since she was not regularly engaged in the active conduct of the business, the petitioner is not entitled to personal service classification for that year.
The evidence discloses that the petitioner customarily received payment for advertising and space from its clients about three days prior to. the date the payment was due to the publisher rendering the service. In some cases payment was not received before the petitioner paid the publisher. In no case in 1918 or 1919 did any client fail to pay ultimately, but occasionally payment by the clients would be delayed for a short while after the petitioner paid the publisher. While it is true that the petitioner received, in 1919, certain notes totaling $7,791.76 in payment of an open account, which notes were not paid prior to the time the petitioner paid the publisher, and that petitioner expended $8,709.28 in 1919 for art work and photos received from the outside and for salaries to individuals employed in the petitioner’s art department, we do not believe that these facts indicate that capital was a material income-producing factor, since the total amount of business done by the petitioner in reserving advertising space for clients was $396,277.42 in 1919.
We hold that the petitioner is entitled to classification as a personal service corporation during the year 1919.
The petitioner advances, as an alternative contention, that if personal service classification is denied and it is not allowed to deduct as an expense an adequate and reasonable salary for its president, although the same was not actually paid to him, the petitioner is entitled to special assessment. We have held contrary to this contention where, as here, there is no showing that the low salary creates such an abnormality as to justify special assessment. See United Shoe Stores Co., 2 B. T. A. 73; Eagle Piece Dye Works, 10 B. T. A. 1360, and Bailey Dental Co. of Iowa, 11 B. T. A. 860.
Reviewed by the Board.

Judgment will be entered under Bule 50.